IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARSHALLE KNOX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIV. ACT. NO. 2:16cv155-TFM |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. Procedural History**

Plaintiff Marshalle Knox ("Knox" or "Plaintiff") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 40, *et seq.* and supplemental security income benefits pursuant to Title XVI, 42 U.S.C. § 1381 *et seq.*, alleging that she is unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act. The ALJ, therefore, denied the plaintiff's claim for benefits. The Appeals Council rejected a subsequent request for review. Consequently, the ALJ's decision became the final

decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.  The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3).  Based on the court's review of the record in this case and the parties' briefs, the court concludes that the Commissioner's decision should be AFFIRMED.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

(1)    Is the person presently unemployed?

(2)    Is the person's impairment severe?

(3)    Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4)    Is the person unable to perform his or her former occupation?

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

>    (5)   Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

### III.   Introduction

#### A.  The Administrative Proceedings

Knox was 58 years old at the time of the hearing and is a college graduate.  R. 63, 65.  Knox previously worked as a social services director and a social worker.  R. 67-68.  Knox alleges that she became disabled on July 20, 2009, from heart problems, panic attacks, migraine headaches, and back, knee, and ankle pain.  R. 65-66, 70, 73.  After the hearing, the ALJ found that Knox suffers from severe impairments of hypertension, diabetes, degenerative disc disease, migraines, and a rod in her right ankle and a non-severe impairment of depression with anxiety.  R. 48.  The ALJ found that Knox has the residual functional capacity to perform sedentary work with limitations, including that she "be reminded of tasks two times per eight-hour workday."  R. 50.  Relying in part on the testimony of the vocational expert, the ALJ concluded that Knox is capable of returning to her past relevant work as a Social Worker Supervisor and Medical Social Worker.  R. 53.

#### B.  The Plaintiff's Claims

As stated by Knox, she presents the following claims:

(1) Did the ALJ err when he found Knox could return to her work as a Social Worker Supervisor, although a Vocational Expert testified that such a job would be precluded if an individual were limited as found by the ALJ?

(2) Did the ALJ err when he found Knox could return to her work as a Medical Social Worker, where the Vocational Expert's testimony was vague, confusing, and inconsistent with the Dictionary of Occupational Titles?

(3) Did the ALJ err in failing to find Knox had a severe mental impairment?

4

Doc. 12, Pl's Br., p. 1.

## IV.   DISCUSSION

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends; and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of, and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981). Within this analytical framework, the court will address Plaintiff's claims.

### A.  Mental Impairment

Knox argues that the ALJ's conclusion that she suffers from no more than mild mental functioning limitations and that her mental impairment is non-severe is not supported by the evidence. Specifically, she asserts that the ALJ's determination that her depression with anxiety is a non-severe impairment is contrary to the medical evidence.

When deciding the severity of Knox's depression at steps two and three of the sequential evaluation, the ALJ determined as follows:

> The claimant's medically determinable impairment of depression with anxiety does not cause more than minimal limitation in the claimant's ability to perform basic mental activities and is therefore nonsevere.

> In making this finding, I have considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part404, Subpart P, Appendix 1).  These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is activities of daily living.  In the area, the claimant has mild limitation.  Since stopping work on the alleged onset date, claimant maintains her personal hygiene, occasionally assists with chores, such as laundry, shops for household supplies and prepares small meals for herself. (Exhibit 8E).
>
> The next functional area is social functioning.  In this area, the claimant has mild limitation. Claimant maintains close relationships with her immediate family, including her children and grandchildren.  She also interacts with her siblings at least monthly for Sunday dinner gatherings and attends church twice a month. (Exhibit 8E).
>
> The third functional area is concentration, persistence or pace.  In this area, the claimant has mild limitation.  At her hearing, the claimant testified that primarily due to pain and depression, she has some difficulty with concentration.  She stated that she still watches television but can only concentrate "a little bit" to follow the plot of a show before going to sleep.
>
> The fourth functional area is episodes of decompensation.  In this area, the claimant has experienced no episodes of decompensation which have been of extended duration.  The medical evidence is devoid of any treatment for episode of decompensation.
>
> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

R. 49.

The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  Indeed, a severe impairment is one that is more than "a slight abnormality or

6

combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987).

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). The plaintiff has the "burden of showing that [her] impairments are 'severe' within the meaning of the Act." *McDaniel*, 800 F.2d at 1030-31. Once the plaintiff establishes that she suffers from a severe impairment, the ALJ is not entitled to ignore that evidence. *Hysmith v. Astrue*, No. 1:10cv18-CSC, 2011 WL 3240781, at *4 (M.D. Ala. 2011).

Substantial evidence supports the Commissioner's finding that Knox's anxiety and depression do not constitute severe mental impairments, at least through January 10, 2013, the date the ALJ entered his decision. The medical records indicate that Knox's mental impairments were treated conservatively during the relevant time period. Between 2008 and 2013, Dr. Leon Casals, a doctor of internal medicine, provided treatment for Knox's mental and physical impairments on a routine basis. Dr. Casals' diagnostic impression was that Knox suffers from anxiety and depression which are "related to stress with her job loss" and/or due to "her personal life and job." R. 369-70, 380, 382, 384, 386, 388, 390, 392-93, 395, 398, 400, 403, 405-06, 409, 411-416, 518, 520. He prescribed Triavil and Xanax and/or Zoloft for the treatment of symptoms. *Id*.; R. 447.

The consultative examiners' findings also support the ALJ's determination that Knox's mental health condition during the relevant time period is not as severe as

alleged. On December 2, 2011, Dr. Alan M. Babb, a doctor of internal medicine, conducted a consultative examination, in which he found as follows:

> This 57-year-old black female with chronic depression, neurotic anxiety, diabetes, hypertension, hypercholesterolemia, and chronic Lortab addiction is referred for a disability exam. She is currently followed by Dr. Leon Casals, a local internist. Before I went in to see her, she was sitting quietly talking to someone who came with her. Her appointment started with me about 8:10 in the morning. However, once I brought her into the exam room, she immediately started becoming hysterical, started speaking in a high pitched crying tone, and this speech pattern continued for the entire interview. However, at no point were tears ever noted.
>
> Today she went into a litany of pain complaints including knee pain, back pain, and shoulder pain. She is not being seen by any specialists. She continued to describe her symptoms in this crying, whining voice that never ceased.
>
> She tells me that she had been working as a social worker up until 2009. She says she quit working because of all these pain complaints. She tells me that she is taking about six to eight Lortab a day.
>
> She also describes a history of chronic migraine headaches but is very vague on the symptoms and admits that she had never seen any specialists.
>
> The patient says she is not being followed by any mental health specialists of any kind. She admits she is not seeing any medical specialists of any kind. She continued to harp on her chronic pain of the knee for pain medications. She admits that she does drive.
>
> At the end of the interview I went over some of the details, and all of a sudden this whiny crying speech just suddenly stopped, she walked out of the room, and carried on a normal conversation with the person who was with her.

R. 419.

Dr. Babb also found as follows:

Physical Exam: Shows a depressed, overweight black female who appears as stated age who is speaking in a high whining, crying tone throughout the

interview that ceased once she left the exam room. No tears were ever noted. Her affect today is very dramatic and clearly contrived. . . .

R. 420.

In addition, Dr. Babb noted:

Neurologic: She has a very flat affect. Her presentation is very contrived. She is very dramatic, seems hysterical but again turns it on, turns it off at will. Gait normal. No tremor noted. Peripheral reflexes normal. Sensory exam is intact. Intellectual skills fair. Mood is inappropriate. Effort and motivation poor. There is clearly an effort to be deceptive.

R. 423.

Dr. Babb's diagnostic impression was chronic depression, severe neurotic anxiety, Lortab addiction, diabetes, hypertension, hypercholesterolemia, and history of chronic headaches of unknown etiology. R. 424. He concluded his evaluation with the following findings:

> She is followed by an excellent internist and I cannot believe that he has not suggested subspecialty evaluation. . . . However, *she admits that she has failed to follow through with any recommendations*.
>
> She clearly has a serious prescription drug problem and she needs to be detoxed from all these medications. I suspect that she is getting them from multiple sources. Indeed her behavior here may be from drug withdraw[al].
>
> *I do not doubt that she has serious underlying psychiatric problems but again she has failed to follow up with any referrals*. She has a serious prescription drug problem. There is no documented reason for her to be on any controlled meds and she is using extremely high dosages of these highly addictive medications.
>
> I do not even think she would have the ability to understand her level of addiction and would probably resist any attempts to get her into a detox program.

R. 424. (Emphasis added.)

9

On December 8, 2011, Dr. Kale E. Kirkland, a licensed psychologist, conducted a consultative evaluation.  R. 427.  He noted that Knox "indicated that she can only sit for approximately 30 minutes, [but that] she was able to do so for much longer than this current evaluation."  R. 429.  During the mental status examination, Dr. Kirkland found "no problems . . . in attention or concentration," that her "thought process and content were normal[ and that she] is not delusional and is not exhibiting any loose associations."  R. 428.  He specifically noted:

> . . . Although she reported the experience of hallucinations, this report was not considered a credible description of true hallucinations.  For example, she indicated that she sees "little green men" every day.  She described these men as "short midgets with horns."  She further described these men with a number of specific details that confirmed that they were not actually present.

R. 428-29.  Dr. Kirkland found that "it was difficult to make a valid or reliable assessment of this patient due to malingering."  R. 429.  In addition, he found that "[a]lthough she is likely suffering from depression at this time, she is feigning psychotic symptoms."  *Id*.  He diagnosed Knox on Axis I with "Malingering" and entered the following prognosis:

> Based on the inconsistent report between her current symptoms and symptoms that were considered to be feigned, a valid prognosis could not be obtained for this patient.  However, it is likely that she is in need of and would benefit from mental health treatment based on her reported depressive symptoms and long list of medications.

*Id*.  He concluded that Knox "was not considered a credible or reliable informant" due to "feigned psychosis." *Id*.

10

On July 19, 2012, Knox went to Medical Outreach Ministries with complaints of stomach and sinus problems. R. 465. Medical personnel noted "she is very anxious" and scheduled an appointment with "Mr. Downs re: severe anxiety and 'panic attacks'." *Id*. Upon reviewing an echocardiogram, a physician noted that "this lady's problem is primarily emotional." *Id*. Thus, the medical records indicate that Knox's mental health condition was treated conservatively by her treating physician, that she did not seek recommended treatment from a mental health specialist and/or counselor during the relevant time period, that a consultative internist found that she made an "effort to be deceptive" (R. 423), and the consultative psychologist diagnosed her as malingering. This court therefore concludes that substantial evidence supports the ALJ's finding that Knox's anxiety and depression do no constitute severe impairments during the relevant time period. *See Larry v. Comm'r of Soc. Sec.*, 506 Fed. Appx. 967 (11th Cir. 2013). In addition, the court has reviewed the record in its entirety and concludes that the ALJ properly applied the psychiatric review technique ratings at steps two and three of the sequential evaluation and that his findings were supported by substantial evidence.

Knox also provided additional mental health records dated after the ALJ's January 2013 decision to the Appeals Council. "The Appeals Council must consider new, material, and chronologically relevant evidence." *Ingram*, 496 F.3d at 1261. *See also Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015). After the hearing before the ALJ, Knox began receiving treatment from Catholic Social Services. On February 21, 2013, Emma Harrell, a licensed professional counselor, noted Knox's mood was anxious, panicky, fearful, and sad, and that her affect was appropriate

and labile. R. 533.  In addition, she found that her thinking style was functional and that any memory impairment was non-significant. *Id*.  The Clinical Services Progress Reports indicate that Knox went to counseling sessions at Catholic Social Services on a routine basis between March 2013 and February 2015.  R. 540-47.

Knox also submitted additional medical records from the Casals Clinic to the Appeals Council. R. 524.  On April 2013, Dr. Casals noted that Knox "has been having some issues with her depression and has had spells of suicide in reb [sic] and was admitted to psychiatric assessment center and is started on Zoloft."  In addition, he noted that she "has been under stress[] with her current life situation" and that she "has been seen by therapy and has been undergoing treatment at this time 3 times a week for the past 2 weeks." R. 524.  Dr. Casals diagnostic impression was "history of depression – will continue with the use of Zoloft and has been seeing a psychologist" and that her anxiety "is related to her stress with her current situation with depression and claims to have inability to work due to her low back pain – she has been on Triavil and Xanax prn" and that her anxiety is also "related to her personal life and her job."  R. 526.  Knox returned to the Casals Clinic on January 27, 2014, with no significant changes noted. R. 527-28.

The Appeals Council considered the additional evidence and found that the information does not provide a basis for changing the ALJ's decision.  R. 2.  In addition, the Appeals Council determined that the Medical Source Statement completed by her counselor on May 7, 2015 is "new information about a later time" and "does not affect

the decision about whether [she was] disabled beginning on or before January 10, 2013."

*Id*. The additional mental health records are not material or chronologically relevant.

> The new evidence must relate to the period on or before the date of the administrative law judge's ("ALJ's") decision. *See Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999); cf. 20 C.F.R. §§ 404.970(b), 416.1470(b) (requiring Appeals Council to consider new evidence "only where is relates to the period on or before the date of the administrative law judge hearing decision."). Evidence of deterioration of a previously-considered condition may subsequently entitle a claimant to benefit from a new application, but it is not probative of whether a person is disabled during a specific period under review. *See Wilson*, 179 F.3d at 1279.

*Enix v. Comm'r of Soc. Sec.*, 461 F. App'x 861, 863 (11th Cir. 2012). This court therefore concludes that the Appeals Council's determination that the additional mental health records do not provide a basis for changing the ALJ's decision is supported by substantial evidence.

### B. The Vocational Expert's Testimony

Knox asserts that the ALJ erred in relying on the vocational expert's testimony when determining that she could return to her past work as a medical social worker and a social work supervisor. The ALJ found as follows:

> The vocational expert testified that the claimant has past relevant work as a Home Health Aide (DOT# 354.377.014, medium, SVP 3); Social Work Supervisor (DOT# 195.137.010, light, SVP 8); School Social Worker (DOT#195.107-038, light, skilled, SVP 7); and Medical Social Worker (DOT# 195.107-030, light, skilled, SVP 7). Assuming the claimant's residual functional capacity as assessed by the undersigned here, the vocation expert testified that the claimant would be able to perform the requirements of past work as a Social Work Supervisor and Medical Social Worker.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as actually and generally performed.

13

R. 53.

The Commissioner concedes that the ALJ erred in determining that Knox is able to return to her position as a supervisor. Doc. 15, Def's Br.. p. 4, n. 1. The Commissioner, however, argues that the ALJ's reliance on the Vocational Expert's testimony that she is able to return to her past work as a medical social worker as it is described in the DOT is correct as a matter of law. Knox contends that the testimony of the vocational expert regarding her ability to perform her past work was muddled and confusing.

The vocational expert's testimony supports a finding that Knox could return to her past work as a medical social worker as the job is described in the DOT. During the hearing, the VE stated that DOT specifies that the medical social worker job is at the sedentary level. The VE also stated that the restriction of needing two reminders a day would be "probably inexcusable" for a social work supervisor, but that for a medical social worker such a restriction "might be okay." R. 79. Thus, the VE's testimony supports the ALJ's finding that Knox was able to return to her past work as a medical social worker.

The vocational expert also stated that the plaintiff would not be able to perform the job at the light level, instead of the sedentary level as stated in the RFC and DOT, and speculated that if the architectural design of the workplace included ramps and stairs "that might be something to contend with, but [he does not] see that as a prohibitive issue in employment." R. 79. The VE's speculation that ramps and stairs in some workplaces may be a problem does not negate the finding that Knox has the residual functional

14

capacity to perform sedentary work with limitations as a social worker as that job is performed in the national economy (*i.e.*, as described in the DOT).  *See Jackson v. Bowen*, 801 F.2d 1291, 1293094 (11th Cir. 1986) (a claimant must show she not only cannot perform her specific job, but that she is unable to perform her past kind of work); *Davison v. Halter*, 171 F.Supp.2d 1282, 1284-85 (S.D. Ala. 2001) (citing SSR 82-61 in stating that a claimant is not disabled "when it is determined that she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy.").  This court therefore concludes that the ALJ's determination that Knox retains the residual functional capacity to perform sedentary work with limitations and can therefore perform the requirements of her past relevant work as a social worker as the job is performed in the national economy is supported by substantial evidence.

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the Commissioner's conclusion that plaintiff is not disabled.  Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

Done this 22nd day of November, 2016.

>       /s/Terry F. Moorer
> TERRY F. MOORER
> UNITED STATES MAGISTRATE JUDGE